Filed 4/17/14  In re P.C. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Colusa)

----

| | |
|---|---|
| In re P.C., a Person Coming Under the Juvenile Court Law. | C075201 |
| COLUSA COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, | (Super. Ct. No. JU3655) |
| Plaintiff and Respondent, | |
| v. | |
| I.V., | |
| Defendant and Appellant. | |

I.V., mother of the minor P.C., appeals from the juvenile court's orders terminating parental rights.  (Welf. & Inst. Code, §§ 366.26, 395.)[1]  Mother contends

_____

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

there was insufficient evidence that her continued custody of P.C. was likely to result in serious emotional or physical damage to him.

Disagreeing, we will affirm the juvenile court's orders.

BACKGROUND

On May 9, 2012, the Colusa County Department of Health and Human Services (Department) filed a section 300 petition on behalf of minor P.C. (then 11 years old). The petition was also filed on behalf of P.C.'s half siblings Ad. (then almost three years old), A. (then two years old), and An. (then two months old).[2] The petition alleged use of methamphetamine by the parents and that Ad. and A. tested positive for methamphetamine. Mother had also failed to follow up with prenatal care for An., missed her scheduled caesarean section delivery, and tested positive for methamphetamine at his birth.

Prior to An.'s birth, the minors had been the subject of a previous dependency case, resulting in P.C.'s detention from parental custody in August 2010. Mother had a history of alcohol abuse and father was incarcerated for domestic violence. The previous dependency had been terminated in August 2011.

The minors were found to be Indian children but the tribe decided not to intervene. Instead, the tribe asked to receive notices of hearings and to be kept informed of the parents' progress and any decision to pursue adoption or termination of parental rights.

The juvenile court sustained the petitions on June 4, 2012; Ad., A., and An. were placed together in foster care. P.C. was placed in a separate home, the same home he had been placed during the previous dependency case. The parents engaged in services and

_____

[2] This appeal was taken from the orders entered at the section 366.26 hearing as to minor P.C. Mother filed an earlier appeal from the termination orders as to minors Ad., A., and An. This court affirmed the juvenile court's orders in that case. (*In re A.J.* (Feb. 5, 2014, C074566 [nonpub. opn.].) The facts, up to the time of the permanency planning hearing for the half siblings, are taken almost verbatim from our previous opinion.

were having supervised visitation three times a week. The juvenile court declared the minors dependents of the court at the July 16, 2012 disposition hearing.

On August 4, 2012, mother was arrested for public intoxication and father, who had also been drinking heavily, was arrested for spousal abuse. The parents had just begun unsupervised visitation prior to the arrests but supervised visits were reinstated. Unsupervised visits were resumed in September 2012 and the Department planned to begin unsupervised weekend visits on October 5, 2012. Mother, however, was arrested again for public intoxication on October 13, 2012. She had been so intoxicated that she did not remember her arrest. At that point, mother recognized she needed to enter an inpatient treatment program and entered the Salvation Army program on November 26, 2012. Supervised visits were reinstated.

Reunification services were terminated on February 15, 2013. The section 366.26 selection and implementation hearing for the half siblings was held on July 15, 2013. At that time, the juvenile court received into evidence two reports from the social worker and reports from the adoptions specialist and Dr. Art Martinez, the Indian Child Welfare Act specialist. Dr. Martinez and the social worker testified at the hearing. At the conclusion of the hearing, the juvenile court found beyond a reasonable doubt that continued custody by the parents was likely to result in serious emotional or physical damage to the half siblings. The juvenile court also found that the half siblings were adoptable and that no exception to adoption applied. The juvenile court terminated parental rights as to Ad., A., and An.

P.C.'s selection and implementation hearing was held on September 16, 2013. In addition to the evidence presented at the hearing for the half siblings, there was also an updated report from the adoptions specialist and additional testimony from Dr. Martinez. At the conclusion of the hearing, the juvenile court found beyond a reasonable doubt that continued custody by the parents was likely to result in serious emotional or physical

3

damage to P.C.  The juvenile court found that P.C. was adoptable and that no exception to adoption applied.  The juvenile court terminated parental rights as to P.C.

DISCUSSION

Mother contends there was insufficient evidence that her continued custody of P.C. was likely to result in serious emotional or physical damage to him.  We disagree.

In order to terminate parental rights when an Indian child is involved, there must be "a determination, supported by evidence beyond a reasonable doubt . . . that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." (25 U.S.C. § 1912(f); see also § 366.26, subd. (c)(2)(B)(ii).)

When the sufficiency of the evidence to support a finding or order is challenged on appeal, even where the standard of proof in the trial court is beyond a reasonable doubt, the reviewing court must determine if there is any substantial evidence -- that is, evidence which is reasonable, credible, and of solid value -- to support the conclusion of the trier of fact.  (*People v. Johnson* (1980) 26 Cal.3d 557, 578; *In re Angelia P.* (1981) 28 Cal.3d 908, 924; *In re Jason L.* (1990) 222 Cal.App.3d 1206, 1214.)  In making this determination, all conflicts are to be resolved in favor of the prevailing party and issues of fact and credibility are questions for the trier of fact.  (*People v. Johnson, supra,* 26 Cal.3d at p. 578; *In re Angelia P., supra,* 28 Cal.3d at p. 924; *In re Jason L., supra,* 222 Cal.App.3d at p. 1214; *In re Steve W.* (1990) 217 Cal.App.3d 10, 16.)  The reviewing court may not reweigh the evidence when assessing the sufficiency of the evidence. (*In re Stephanie M.,* (1994) 7 Cal.4th 295, 318.)

Mother identifies no evidence establishing that she was able to safely take physical custody of P.C.  To the contrary, the June 2013 written report by Dr. Martinez specifically stated that mother was not at a place where return of the minors was indicated.  Dr. Martinez noted that, while mother was doing well in her recovery, she was living at the Salvation Army Treatment Center where there were "a few observed issues

4

of harm or risk" and, furthermore, "without the safety and security of the current [sheltered] environment, it is at least possible that the mother's enduring post-traumatic responses would reengage, therefore causing her to become emotionally volatile leading to mismanagement of the children." He believed she was unable to live on her own outside a sheltered environment and he did not believe she was currently able to care for the minors.

In a June 2013 letter to the juvenile court, mother's therapist opined that mother was doing well in her approach to recovery, but the therapist said nothing to establish that it was safe to return the minors to mother's custody.

The social worker believed that, due to mother's progress in recovery, six months of additional reunification services might be warranted. However, the social worker did not suggest returning the minors with maintenance services.

Mother argues that although those reports were made in June or July of 2013, P.C.'s hearing was held two months later, giving mother "two additional months to progress in her ability to care for the child." But the passage of time, without more, does not evidence remediation of risk to P.C. There was no evidence of any new progress or change to suggest mother was currently ready to safely take custody of P.C.

Mother also points out that Dr. Martinez did not believe serious emotional or physical damage would result if mother had *legal* custody. But even if the juvenile court had accepted that opinion, it was still required to find detriment if mother's physical custody of P.C. was likely to result in serious emotional or physical damage to him. The use of the word "custody" in 25 U.S.C. section 1912(f) and section 366.26, subdivision (c)(2)(B)(ii) includes both legal and physical custody, and the Indian Child Welfare Act recognizes different types of custody. (*In re Crystal K.* (1990) 226 Cal.App.3d 655, 667-668.) The use of the phrase "continued custody," without delineating the type, means the phrase encompasses both physical and legal custody. (*Ibid.*)

Substantial evidence supports the juvenile court's finding that mother's continued custody of P.C. was likely to result in serious emotional or physical damage to him.

## DISPOSITION

The orders of the juvenile court are affirmed.


          MAURO          , J.


We concur:


         RAYE         , P. J.


         HULL         , J.